**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Northern Division**

| | |
|---|---|
| **PROGRESSIVE CASUALTY INSURANCE COMPANY** | * |
| 300 N. Commons Blvd. | * |
| Mayfield Village, OH 44143 | |
| | * |
| Plaintiff, | |
| | *   CIVIL ACTION NO. |
| v. | |
| | * |
| **LIL KIDZ KASTLE DAY CARE CENTER INC.** | |
| 11447 Cronhill Drive | * |
| Owings Mill, MD 21117 | |
| | * |
| <u>Serve on</u>: | |
| Nicole Knox, Resident Agent | * |
| 3924 Red Deer Circle | |
| Randallstown, MD 21133 | * |
| | |
| And | * |
| | |
| **JAMES WEEMS** | * |
| (DOC #00504132/ SID #1082710) | |
| Western Correctional Institution | * |
| 13800 McMullen Hwy, SW | |
| Cumberland, MD 21502 | * |
| | |
| And | * |
| | |
| **SHANTEARI WEEMS a/k/a SHANTEARI YOUNG** | * |
| 11 Taube Ct. | * |
| Owings Mills, MD 21117 | |
| | * |
| And | |
| | * |
| **NICOLE KNOX** | |
| 11 Taube Ct. | * |
| Owings Mills, MD 21117 | |
| | * |
| And | |
| | * |

**KELLI STANTON**
Individually and as                                    \*
Mother and Next Friend of
**P.D.**, a Minor                                      \*
4658 Riverstone Drive
Owings Mills, MD 21117                                 \*

And                                                    \*

**SHANNON SIMPKINS**                                   \*
As Mother and Next Friend of
**A.B.**, a Minor                                      \*
9244 Owings Choice Court
Owings Mills, MD 21117                                 \*

And                                                    \*

**MOM DOE YLG8577**                                    \*
Individually and as Mother and Next Friend to
**JANE DOE YLG8577**, a Minor,                         \*
By and through her mother,
c/o Yost Legal Group                                   \*
341 N. Calvert Street, Suite 100
Baltimore, MD 21202                                    \*

    Defendants.                    \*

                                                   \*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## COMPLAINT FOR DECLARATORY JUDGMENT

    Plaintiff, Progressive Casualty Insurance Company ("Progressive"), pursuant to 28 U.S.C. §§ 2201 and Federal Rule of Civil Procedure 57, files this Complaint for Declaratory Judgment against Defendants, Lil Kidz Kastle Day Care Center, Inc. ("LKK"), James Weems, Shanteari Weems a/k/a Shanteari Young, Nicole Knox, Kelli Stanton, individually, and as mother and next friend of P.D., a minor, Shannon Simpkins, as mother and next friend of A.B., a minor, and Mom Doe YLG8577, individually, and as mother and next friend to Jane Doe YLG8577, and seeks a declaration of Progressive's and Defendants' rights and obligations under the four (4) Commercial Auto Policies Progressive issued to LKK, which are as follows: Policy No. 01836329-6 (Policy

2

Period September 20, 2018 – September 20, 2019); Policy No. 01836329-7 (Policy Period September 20, 2019 – September 20, 2020) ; Policy No. 01836329-8 (Policy Period September 20, 2020 – September 20, 2021); and Policy No. 01836329-9 (Policy Period September 20, 2021 – September 20, 2022)(referred to collectively herein as the "Commercial Auto Policies"). Copies of each of the Commercial Auto Policies are attached hereto and incorporated herein by reference as **Exhibits 1-4**.

Specifically, Progressive submits that the Commercial Auto Policies do not provide coverage for any damages arising from the child sexual abuse claims that are asserted in *Stanton v. Lil Kidz Kastle Daycare Center, Inc*., et al. (Case No. C-03-CV-25-000797) (the "Stanton Action") , *Simpkins v. Lil Kidz Kastle Daycare Center, Inc., et al*. (Case No. C-03-CV-25-000146) (the "Simpkins Action"), and *Doe YLG8577 v. Lil Kidz Kastle Daycare Center, Inc., et al*. (Case No. C-03-CV-25-002734) (the "Doe Action") (referred to collectively herein as the "Underlying Actions").  Therefore, Progressive seeks a declaration from this Honorable Court that Progressive has no duty to defend and/or indemnify any of the claims asserted in the Underlying Actions under the Commercial Auto Policies.  In support thereof, Progressive states as follows:

## PARTIES

1.      Plaintiff Progressive Casualty Insurance Company ("Progressive") is a corporation incorporated and existing under the laws of the State of Ohio, with its principal place of business in the State of Ohio. Progressive is duly licensed and authorized to engage in the insurance business in the State of Maryland.

2.      Defendant Lil Kidz Kastle Day Care Center, Inc. ("LKK") is a corporation incorporated and existing under the laws of the State of Maryland, with its principal place of business in the State of Maryland.  LKK previously operated a child day-care center in Owings

Mill, Maryland that was the site for the child sex abuse alleged in the Underlying Actions. At all relevant times hereto, Progressive provided insurance coverage to LKK pursuant to the Commercial Auto Policies.

3.      Defendant James Weems ("Mr. Weems"), DOC #00504132/ SID #1082710, is an adult resident and domiciliary of the State of Maryland, and is currently incarcerated at Western Correctional Institution, 13800 McMullen Hwy, SW, Cumberland, MD 21502.

4.      Defendant Shanteari Weems a/k/a Shanteari Young ("Ms. Young") is an adult resident and domiciliary of the State of Maryland, residing at 11 Taube Ct., Owings Mills, MD 21117.

5.      Defendant Nicole. Knox ("Ms. Knox") is an adult resident and domiciliary of Maryland, residing at 11 Taube Ct., Owings Mills, MD 21117.  Knox previously owned and operated LKK.

6.      Defendant Kelli Stanton ("Ms. Stanton") is an adult resident and domiciliary of Maryland and appears in the Stanton Action individually and as mother and next friend of P.D., a minor.  Both Stanton and P.D. reside at 4658 Riverstone Drive, Owings Mills, MD 21117.

7.      Defendant Shannon Simpkins ("Ms. Simpkins") is an adult resident and domiciliary of Maryland and appears in the Simpkins Action as mother and next friend of A.B., a minor.  Both Simpkins and A.B. reside at 9244 Owings Choice Court, Owings Mills, MD 21117.

8.      Defendant Mom Doe YLG8577 ("Mom Doe") is an adult resident and, upon information and belief, is a domiciliary of Maryland and appears in the Doe Action individually and as mother and next friend to Jane Doe YLG8577 ("Jane Doe"), a minor.  Upon information and belief, both Mom Doe and Jane Doe reside in Owings Mills, MD.

4

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1) as the amount in controversy exceeds the sum of $75,000.00 exclusive of interest and costs, and there is complete diversity between Plaintiff and Defendants.

10.      This Court has authority to grant Progressive declaratory relief pursuant to 28 U.S.C. §§ 2201 and Federal Rule of Civil Procedure 57 as this action involves an actual controversy that occurred and arose within this Court's jurisdiction.

11.      Venue is proper in this Court pursuant to 8 U.S.C. § 1391 because the Defendants resides in this District and because a substantial part of the events or omissions giving rise to this action occurred in this District.

## STATEMENT OF FACTS

### THE STANTON ACTION

12.      The Complaint in the Stanton Action alleges as follows:

    a. LKK opened its Owing Mills, Maryland, location in 2006 and provided daycare services at that location for children who were between 6 weeks to 12 years old.  LKK's daycare services include before-care services before the school day started and after-care services after school day ended.  LKK offered transportation to and from school to children who used before and/or after care and would transport children in a "white van that provided seating for the driver and 14 passengers."  ¶ 16-19.

    b. Mr. Weems began working at LKK around 2007. Mr. Weems' responsibilities at LKK from 2007 to August, 2021, "included, but were not limited to, maintaining the van, fixing and maintaining the daycare

premises, retrieving supplies need to run the daycare, and driving children to and from school in the van as needed." ¶ 22 & 25.

c.  Starting in August 2021, LKK charged Mr. Weems "with primary responsibility for transporting children in the van."  "In or about 2015, Plaintiff Stanton enrolled her then 3-year-old daughter, P.D., with Defendant LKK."  "Upon information and belief, Defendant Weems identified P.D., a shy girl who exhibited symptoms of neurologic development delay, as a prime target to victimize."  "Defendant Weems singled out P.D. by referring to her as his 'little buddy' and 'little helper,' and providing her special snacks, including chips, donuts and candy, that other children at the daycare were not offered."  ¶ 26 & 32 & 36-37.

d.  "In approximately 2019, Defendant Weems confined P.D., restricted her movement, and forced her-then only 7 years-old-to watch internet pornography with him…."  "Soon thereafter, while continuing to confined and forced P.D. to watch pornography, Defendant Weems's committed additional offenses against P.D. of varying nature and degree, including but not limited to the following offenses: a. Exposing his naked penis to P.D.; b. Groping and fondling P.D.'s genitalia; [and] c. Forcing P.D. to perform oral sex on Defendant Weems…."  ¶ 38-39.

e.  "Defendant Weems committed the above-described offenses against P.D. through July 2022" and that "Defendant Weems committed the above-described offense against P.D. in and around the daycare, including but not limited to the school age children room and the

outdoor playground, as well as in the van." "On July 18, 2022, a family member noticed that P.D. had used a web browser to navigate to [a pornographic website] on a family tablet and was watching pornography." ¶ 40-43.

f. "When asked how she, a 10-year-old, knew about the website, P.D. replied 'Mr. James.'" "On November 1, 2024, a Baltimore County jury convicted Defendant Weems on six counts for offenses committed against P.D." "Specifically, Defendant Weems was found guilty of violating Maryland Code, Criminal Law ('CL') Article § 3-304 (rape in the second degree), § 3-602(b)(1) (sexual abuse of a minor), and § 11-203(b)(1) (display of obscene item to minor)." ¶ 43-44.

13.    The Stanton Action includes the following claims:  Count I: False Imprisonment (Defendants James Weems, Shanteari Young, Nicole Knox and LKK); Count II: Negligence (Defendants James Weems, Shanteari Young, Nicole Knox and LKK); Count III: Gross Negligence (Defendants James Weems, Shanteari Young, Nicole Knox and LKK); Count IV: Premises Liability (Defendants Shanteari Young, Nicole Knox and LKK); Count V: Negligent Hiring, Training, and Supervision (Defendants Shanteari Young, Nicole Knox and LKK); Count VI: Breach of Fiduciary Duty (Defendants James Weems, Shanteari Young, Nicole Knox and LKK); and Count VII: Parental Claim for Damages (Defendants James Weems, Shanteari Young, Nicole Knox and LKK).

## THE SIMPKINS ACTION

14.    The Amended Complaint in the Simpkins Action alleges as follows:

a. LKK operates a daycare center at a location in Owing Mills, Maryland. "Shannon Simpkins, entered into a contract with Defendant Lil Kidz beginning on or about July 2021 through July 20, 2022, whereby she paid Defendant Lil Kidz to provide daycare services to A.B." "Shannon Simpkins entrusted her child, Plaintiff A.B., to the supervision and care of Defendant Lil Kidz and Defendant Shantari (sic).   In return, Defendants accepted Plaintiff A.B. into the daycare and agreed to provide Plaintiff A.B. with proper and reasonable supervision and daycare."  ¶ 11-14.

b. "Upon information and belief, for approximately a year prior to the subject incident, Defendant James in appropriately sexually assaulted, sodomized and touched several children under the care of Defendant Lil Kidz and Defendant Shanteari, while employed by Defendant Lil Kidz and Defendant Shantari (sic), including by: a. Inserting his genitalia into the mouth of the children [and] b. Touching the children's genitalia".  ¶ 15.

c. "Plaintiff A.B., born on February 7, 2015, was seven years old on the date of the incident at issue in this lawsuit, and thus a minor."  "Upon information and belief, while Plaintiff A.B. was at Lil Kidz Kastle Daycare Center, Defendant James, while acting as an agent, servant and employee of Defendant Lil Kidz and Defendant Shanteari, touched the private parts of Plaintiff A.B. And inserted his genitalia into the mouth of Plaintiff A.B." "During each sexual assault and battery by Defendant

James, Plaintiff was unlawfully deprived of his liberty to leave the transportation van, daycare center, and/or room/facility he was held in by Defendant Weems." ¶ 16-18 & 123.

d. Mr. Weems was criminally charged for the above sexual abuse and/or molestation of A.B. and "[a]fter a trial was held…Defendant Weems was found guilty of the following…CR.3.602(b)(1): Sex Abuse Minor…CR.3.304: Rape Second Degree… [and] CR.11.203(b)(1): Display Obscene Material to Minor". ¶ 21.

15. The Simpkins Action includes the following claims: Count I: Negligence (Defendants James Weems, Shanteari Young, Nicole Knox and LKK); Count II: Negligent Hiring, Training, Retention, Supervision (Defendant Shanteari Young); Count III: Negligent Hiring, Training, Retention, Supervision (Defendant LKK); Count IV: Gross Negligence (Defendants James Weems, Shanteari Young, Nicole Knox and LKK); Count V: Negligent Hiring, Training, Retention, Supervision (Defendant Nicole Knox); Count VI: Assault (Defendants James Weems, Shanteari Young, Nicole Knox and LKK); Count VII: Battery (Defendants James Weems, Shanteari Young, Nicole Knox and LKK); Count VIII: Intentional Infliction of Emotional Distress (Defendants James Weems, Shanteari Young, Nicole Knox and LKK); and Count IX: False Imprisonment (Defendants James Weems, Shanteari Young, Nicole Knox and LKK).

## THE DOE ACTION

16. The Complaint in the Doe Action alleges as follows:

a. LKK opened its Owing Mills, Maryland, location in 2006 and provided daycare services at that location for children who were between 6 weeks to 12 years old. LKK's daycare services include before-care services

before the school day started and after-care services after school day ended.  LKK offered transportation to and from school to children who used before and/or after care and would transport children in a "white van that provided seating for the driver and 14 passengers." ¶ 16-19.

b. Mr. Weems began working at LKK around 2007 when he and Ms. Young first began dating (both were later married in 2013). Mr. Weems' responsibilities at LKK from 2007 to August, 2021, "included, but were not limited to, maintaining the van, fixing and maintaining the daycare premises, retrieving supplies need to run the daycare, and driving children to and from school in the van as needed." ¶ 22 & 25.

a. Starting in August 2021, LKK charged Mr. Weems "with primary responsibility for transporting children in the van."  "Plaintiff Mom Doe YLG8577 entrusted her child, Jane Doe YLG8577, to the supervision and care of the LKK Defendants, including their agents, servant and employees, including Defendant Weems."  "At all times relevant hereto Jane Doe YLG8577 and her siblings were transported to and from her schools during the academic year (i.e. from approximately August through June)." ¶ 26 & 32 & 36-37.

b. "In 2021, when Jane Doe YLG8577 went to different school, she continued to use the services of LLK Defendants because she had a younger sibling in daycare as well."  "Upon information and belief, from 2021 through August 2021, Defendant Weems would pick up Jane Doe YLG8577 after school before any other children were on the bus."

10

"Since her school let out earlier than the elementary school, Jane Doe YLG8577 would he on the bus along with Defendant Weems for at least 20 minutes every day and utilize this time to sexually assault her." ¶ 33-34.

c. "During these minutes while Defendant Weems had Jane Doe YLG8577 alone on the van, he would engage in childhood sexual abuse that is still so traumatizing it is difficult for her to fully disclose." "Plaintiff Jane Doe YLG8577 has been able to disclose that she was sexually abused by Weems." "Plaintiff Jane Doe YLG8577 is continuing to reveal the details of this sexual abuse through therapy." "Defendant Weems committed the above-described offenses against Jane Doe YLG8577 beginning in 2019 and continuing through July 2022." ¶ 35-36.

d. "On November 1, 2024, a Baltimore County jury convicted Defendant Weems on six counts for offenses committed against Jane Doe YLG8577 See State v. Weems, C-03-CR-22-004023 in the Circuit Court for Baltimore County." "Specifically, Defendant Weems was found guilty of violating Maryland Code, Criminal Law (-CC') Article § 3-304 (rape in the second degree), § 3-602(b)(1) (sexual abuse of a minor), and § 11-203(b)(1) (display of obscene item to minor)." ¶ 37.

17. The Doe Action includes the following claims: Count I: False Imprisonment (Defendants James Weems, Shanteari Young, Nicole Knox and LKK); Count II: Negligence (Defendants James Weems, Shanteari Young, Nicole Knox and LKK); Count III: Premises Liability (Defendants Shanteari Young, Nicole Knox and LKK); Count IV: Negligent Hiring,

Training, and Supervision (Defendants Shanteari Young, Nicole Knox and LKK); Count V: Breach

of Fiduciary Duty (Defendants James Weems, Shanteari Young, Nicole Knox and LKK); and

Count VI: Parental Claim for Damages (Defendants James Weems, Shanteari Young, Nicole Knox

and LKK).

**THE RELEVANT POLICY PROVISIONS**

18.    Because the Underlying Actions collectively allege that Mr. Weems' sexual abuse

against the minors occurred at some point between 2019 and 2022, the Underlying Actions may

create a possibility for coverage under one or more of the following four Commercial Auto

Policies:  Policy No. 01836329-6 (Policy Period September 20, 2018 – September 20, 2019);

Policy No. 01836329-7 (Policy Period September 20, 2019 – September 20, 2020) ; Policy No.

01836329-8 (Policy Period September 20, 2020 – September 20, 2021); Policy No. 01836329-9

(Policy Period September 20, 2021 – September 20, 2022).

19.    More specifically, because both the Stanton and Doe Actions allege that Mr.

Weems' sexual abuse against the minors started in 2019 and continued through July, 2022, these

specific actions may create a possibility for coverage under all four Commercial Auto Policies.

However, even if all four Commercial Auto Policies were triggered by the allegations in the

Stanton and Doe Actions, the liability limits available to those claimants would still be restricted

to the $500,000 combined single limit that appears on the declarations page of Policy No.

01836329-6 (Policy Period September 20, 2018 – September 20, 2019) (the "First Policy").

20.    As is the case with all four Commercial Auto Policies, the First Policy clearly states

that "[Progressive] will pay no more than the Limit of Liability shown on the declarations page for

this coverage for the insured auto involved in the accident ***regardless of*** [*inter alia*]…***the number***

***of policies issued by us***…[or] the number of claims or lawsuits arising out of an accident…."

(emphasis added).  The First Policy also clearly states that "[f]or the purpose of determining our Limit of Liability under Section 1…all bodily injury…resulting from continuous or repeated exposure to substantially the same event, *shall be considered as resulting from one accident*". (emphasis added).  In addition, the First Policy states that "[i]f any applicable insurance other than this policy is issued to you by us, or any company affiliated with us, *and applies to the same accident or loss, the total amount payable among all such policies shall not exceed* the limits provided by the single policy with the highest limits of liability." (emphasis).

21.    As is explained below, it is Progressive's position that none of the allegations in the Underlying Actions constitute an "accident" or "occurrence" but even if Progressive were to concede that point (which it does not), the clear terms of the First Policy would restrict the claimants in the Stanton and Doe Actions to the $500,000 combined single limit available under the First Policy because the allegations of the sexual abuse Mr. Weems commenced in 2019 describe, at best, a single accident that began under the policy period for the First Policy.

22.    Similarly, because the Simpkins Action alleges that Mr. Weems' sexual abuse against that minor started in July 2021 and continued through July, 2022, this specific action may create a possibility for coverage under the following two Commercial Auto Policies: Policy No. 01836329-8 (Policy Period September 20, 2020 – September 20, 2021) (the "Third Policy"); Policy No. 01836329-9 (Policy Period September 20, 2021 – September 20, 2022) (the "Fourth Policy").   However, even if the Third and Fourth Policies were triggered by the allegations in the Simpkins Action, the liability limits available to those claimants would still be restricted to the $100,000 combined single limit that appears on the declarations page of the Third Policy. This result is required because the allegations of the sexual abuse Mr. Weems commenced in 2021 describe, at best, a single accident that began under the policy period for the Third Policy.

23.    Maryland courts have made clear that, where a liability policy defines an "accident", in part, as "a continuous or repeated exposure" (as is the case under the Commercial Auto Policies), and provides that the limits of the earliest policy triggered shall apply to all injuries arising from that same accident (regardless of how many subsequent policies may also be triggered), such injuries will be treated as arising from a single accident and the limits of the earliest policy will be applied:

> The "Limits of Liability" provision in the policy in *Hiraldo*, while similar to the provision in the instant case, contains one important difference. The provision reads: **Regardless of the number of** insured persons, injured persons, claims, claimants **or policies** involved, our total liability . . . coverage . . . ." *Hiraldo v. Allstate insurance Company*, 778 N.Y.S.2d 50, 51 (N.Y. Sup. Ct. 2004) (emphasis added). Unlike the provision in the instant case, the *Hiraldo* provision clearly indicated that liability was limited regardless of the number of policies implicated. In the instant case, USAA made no reference to the implication of the limit of liability provision in the event of multiple policies.

*United Servs. Auto. Ass'n v. Riley*, 393 Md. 55, 82 (2006) (emphasis in original).

24.    Policy No. 01836329-6 through No. 01836329-8 insured a 2006 Ford Econo/Club Wagon (VIN #1FBSS31L76HA59705) ("Insured Auto No. 1").  However, on October 14, 2020, while Policy No. 01836329-8 was in force, LKK removed the above vehicle and replaced it with a 2019 Chevrolet Express G3500 (VIN #1GAZGPFG0K1229719) ("Insured Auto No. 2"), which was then insured under Policy No. 01836329-8 for the remainder of the policy period and then insured under Policy No. 01836329-9.

25.    The Commercial Auto Policies do not provide any coverage for any sexual abuse and/or molestation that occurred on any premises owned and/or maintained by LKK and the Underlying Actions do not clearly identify the "white van" that was purportedly involved in the sexual abuse and/or molestation of any of the minors named in the Underlying Actions as either Insured Auto No. 1 and/or Insured Auto No. 2.

26.     Progressive does not concede that any of the sexual abuse and/or molestation alleged in the Underlying Actions occurred in Insured Auto No. 1 and/or Insured Auto No. 2. However, for purposes of this Declaratory Judgment Action, Progressive, upon information and belief, assumes that the claimants in the Underlying Actions are alleging that the sexual abuse and/or molestation that is the subject of their claims occurred in one of the above vehicles.

27.     Progressive submits that, with the exception of the policy periods and the applicable limits, the terms and conditions of each of the four (4) Commercial Auto Policies are identical. Progressive further submits that the policy provisions that are relevant to this Honorable Court's consideration of the instant coverage dispute are as previously stated and as set forth below:

### COMMERCIAL AUTO POLICY

If **you** pay **your** premium when due, **we** will provide the insurance described in this policy.

### DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each **accident** or **loss** even if **you** or the person seeking coverage is not at fault. Refer to your policy documents for the claims phone number.

\*       \*       \*

A person seeking coverage must:

\*       \*       \*

4.   promptly call **us** to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to any claim or lawsuit;

\*       \*       \*

### GENERAL DEFINITIONS

The words and phrases below, whether in the singular, plural or possessive, have the following special meanings when appearing in boldface type in this policy, and in endorsements issued in connection with this policy, unless specifically modified.

1.   "**Accident**" means a sudden, unexpected and unintended event, or a continuous or repeated exposure to that event, that causes **bodily injury** or **property damage**.

15

2. "**Auto**" means a land motor vehicle or **trailer** designed for travel on public roads, or any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged. It does not include **mobile equipment**. Self-propelled vehicles with the following types of permanently attached equipment are **autos**, not **mobile equipment**:
   a. equipment designed and used primarily for:
      (i)  snow removal;
      (ii) road maintenance, but not construction or resurfacing;
      (iii) street cleaning;
   b. cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and
   c. air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment.

3. "**Bodily injury**" means bodily harm, sickness, or disease, including death that results from bodily harm, sickness, or disease.

4. "**Declarations**" or "**declarations page**" means the document prepared by **us** listing **your** policy information, which may include the types of coverage **you** have elected, the limit for each coverage, the cost for each coverage, the specifically described autos covered by this policy, and the types of coverage for each specifically described auto.

5. "**Insured auto**" or "**your insured auto**" means:
   a. Any **auto** specifically described on the **declarations page**; or
   b. An additional **auto** for Part I - Liability To Others and/or Part II - Damage To Your Auto on the date **you** become the owner if:
      (i)  **you** acquire the **auto** during the policy period shown on the **declarations page**;
      (ii) **we** insure all **autos** owned by **you** that are used in **your** business;
      (iii) no other insurance policy provides coverage for that **auto**; and
      (iv) **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.
   
   If **you** add any coverage, increase **your** limits or make any other changes to this policy during the 30 day period after **you** acquire an additional **auto**,

   these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits or make such changes for the additional **auto**. **We** may charge premium for the additional **auto** from the date **you** acquire the **auto**.

   With respect to Part I - Liability To Others, if **we** provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page**.

*      *      *

16

16. **"We," "us"** and **"our"** mean the company providing this insurance as shown on the **declarations page**.

17. **"You," "your"** and **"yours"** refer to the named insured shown on the **declarations page**.

\*       \*       \*

## PART I - LIABILITY TO OTHERS

### INSURING AGREEMENT - LIABILITY TO OTHERS

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense**, for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. However, **we** will only pay for the **covered pollution cost or expense** if the same **accident** also caused **bodily injury** or **property damage** to which this insurance applies.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

### ADDITIONAL DEFINITIONS USED IN THIS PART ONLY

A. When used in Part I - Liability To Others, **insured** means:
   1. **You** with respect to an **insured auto**.
   2. Any person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire, or borrow except:

\*       \*       \*

3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I - Liability To Others.

\*       \*       \*

**EXCLUSIONS - PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART I - LIABILITY TO OTHERS.**

Coverage under this Part I, including **our** duty to defend, does not apply to:

1. **Expected or Intended Injury**
   **Bodily injury** or **property damage** either expected by or caused intentionally by or at the direction of any **insured**.

\*       \*       \*

17

**LIMIT OF LIABILITY**

**We** will pay no more than the Limit of Liability shown on the **declarations page** for this coverage for the **insured auto** involved in the **accident** regardless of:
1.  the number of premiums paid;
2.  the number of **insured autos** or trailers shown on the **declarations page**;
3.  the number of policies issued by **us**;
4.  the number of vehicles or **insureds** involved in an **accident**; or
5.  the number of claims or lawsuits arising out of an **accident**,
subject to the following:

\*       \*       \*

2.  **Combined Bodily Injury and Property Damage Limits**

    Subject to the terms of Section 1 above, if **your declarations page** indicates that combined **bodily injury** and **property damage** limits apply for "each accident" or "combined single limit" applies, the most **we** will pay for the aggregate of all damages and **covered pollution cost or expense** combined, resulting from any one **accident**, is the combined liability insurance limit shown on the **declarations page** for the **insured auto** involved in the **accident**.

\*       \*       \*

For the purpose of determining **our** Limit of Liability under Sections 1., 2., and 3. above, all **bodily injury**, **property damage**, and **covered pollution cost or expense**, resulting from continuous or repeated exposure to substantially the same event, shall be considered as resulting from one **accident**.

\*       \*       \*

## GENERAL PROVISIONS

1.  **Policy Period and Territory**

    This policy applies only to **accidents** and **losses** occurring during the policy period shown on the **declarations page** and that occur within a state, territory, or possession of the United States of America, or a province or territory of Canada, or while an **insured auto** is being transported between their ports.

\*       \*       \*

4.  **Two or More Policies Issued By Us**

    If any applicable insurance other than this policy is issued to **you** by **us**, or any company affiliated with **us**, and applies to the same **accident** or **loss**, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.

13. **Severability**

Except with respect to the Limit of Liability, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or lawsuit is brought.

\*          \*          \*

16. **Duty to Report Changes**

**You** must promptly notify **us** when:
1.   **your** mailing or business address changes;
2.   the principal garaging address of an **insured auto** changes;
3.   there is a change to the persons who regularly operate an **insured auto**; or
4.   **you** acquire, sell, or dispose of **autos**.

\*          \*          \*

## Additional insured endorsement

**Mailing Address**
Progressive Casualty Insurance Co
PO Box 94739
Cleveland, OH 44101

**1-800-444-4487**
For customer service, 24 hours a day,
7 days a week

**Name of Person or Organization**

SHANATERI YOUNG
3924 RED DEER C
RANDALLSTOWN, MD 21133

The person or organization named above is an **insured** with respect to such liability coverage as is afforded by the policy, but this insurance applies to said **insured** only as a person liable for the conduct of another **insured** and then only to the extent of that liability.  **We** also agree with **you** that insurance provided by this endorsement will be primary for any power unit specifically described on the **Declarations Page**.

**Limit of Liability**
**Bodily Injury**                    Not applicable
**Property Damage**              Not applicable
**Combined Liability**           $500,000 each **accident**

**All other terms, limits and provisions of this policy remain unchanged.**

This endorsement applies to Policy Number: 01836329-6
Issued to (Name of Insured): LIL KIDZ KASTLE DAY CARE
                                                CENTER INC.
Effective date of endorsement: 09/20/2018          Policy expiration date: 09/20/2019

Form 1198 (01/04)

## INSURANCE DISPUTE AND APPLICATION OF THE POLICY

### MR. WEEMS, MS. YOUNG AND MS. KNOX DO NOT QUALIFY AS AN "INSURED" UNDER THE COMMERCIAL AUTO POLICIES

28.      As noted above, the liability coverage provided under "Part I-Liability To Others"

states that, if all of the terms of the Commercial Auto Policies are satisfied, "[Progressive] will pay

19

damages...for bodily injury...for which **_an insured_ _becomes_ _legally_ _responsible_** because of an accident arising out of the ownership, maintenance or use of that insured auto." (emphasis added).

29.     Part I further states that "'[i]nsured' means...1. [LKK] with respect to an insured auto [and] 2. Any person while using, with [LKK's] permission, **_and within the scope of that permission_**, an insured auto [LKK] own[s]...3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I-Liability To Others." (emphasis added).

30.     The Commercial Auto Policies also include an Additional Insured Endorsement for Ms. Young which provides that "this insurance applies to said insured **_only as a person liable for the conduct of another insured_** and then only to the extent of that liability." (emphasis added).

31.     Based upon the above terms of the Commercial Auto Policies, Progressive submits that, while LKK is a named insured, Mr. Weems, Ms. Young and Ms. Knox cannot qualify as "insureds".  Therefore, any claims against Mr. Weems, Ms. Young and Ms. Knox are not covered under the Commercial Auto Policies for that reason and the additional reasons that will be provided below.

32.     As to Mr. Weems, Maryland courts have instructed that "where an employee's actions are personal, or where they represent a departure from the purpose of furthering the employer's business, or where the employee is acting to protect his own interests, even if during normal duty hours and at an authorized locality, the employee's actions are outside the scope of his employment." *Tall ex rel. Tall v. Bd. of Sch. Comm'rs*, 120 Md. App. 236, 252 (1998).

33.     Indeed, Maryland courts have specifically held that "[a]part from being malicious, sexual abuse of a minor is criminal conduct (*see* Maryland Code, § 3-602 of the Criminal Law

Article) that is not within the scope of a[n] [employee's] employment or authority." *Montgomery Cty. Bd. of Educ. v. Horace Mann Ins.*, 383 Md. 527, 545 (2004).

34.     Consequently, Mr. Weems does not qualify as an "insured" under the Commercial Auto Policies because (1) he is not a named insured; (2) any sexual abuse and/or molestation of any of the minors that occupied the insured auto was not "within the scope" of the permission he was given to use the insured auto as a matter of law; and (3) he is not being held legally liable for the acts of "another insured" and, instead, is being held liable for his own acts.

35.     As to Mrs. Young and Ms. Knox, they do not qualify as "insured" under the Polices because (1) neither is a named insured; (2) neither is alleged to have operated or used the insured auto to injure the minors; and (3) neither is being held legally liable for the acts of "another insured" since Mr. Weems, as has already been stated, is clearly is not a "person otherwise covered under this Part I-Liability to Others".

36.     Moreover, the Additional Insured Endorsement does not alter this result for Ms. Young because it also provides that "this insurance applies to said insured only as a person liable for the conduct of ***another insured*** and then only to the extent of that liability" (emphasis added). Again, Ms. Young cannot qualify as an insured if Mr. Weems cannot do so.

37.     Consequently, because Mr. Weems, Ms. Young and/or Ms. Knox are not insureds under the Commercial Auto Policies, Progressive has no duty to defend and/or indemnify Mr. Weems, Ms. Young and/or Ms. Knox for any of the claims asserted in the Underlying Actions.

### THE ALLEGED SEXUAL ABUSE OF MINORS CANNOT QUALIFY AS AN "ACCIDENT" UNDER THE COMMERCIAL AUTO POLICIES

38.     The "General Definitions" section in the Commercial Auto Policies define the term "accident", in relevant part, as "a sudden, unexpected and unintended event...that causes bodily injury...."

39.     As this Court has recognized, "Maryland courts [have] held that, as a matter of law, sexual molestation cannot constitute negligence so as to create a potentiality of insurance coverage." *Harrison v. Fireman's Fund Ins. Co.*, Civil Action No. ELH-11-1258, 2011 U.S. Dist. LEXIS 149213, at *30 (D. Md. Dec. 29, 2011).  Consequently, any alleged sexual abuse and/or molestation of the minors referenced in the Underlying Actions by Mr. Weems cannot be considered "a sudden, unexpected and unintended event".[1]

40.     It is well settled in Maryland that, in a liability insurance policy, a claim based on sexual misconduct does not come within the definition of an "accident" or "occurrence" because such conduct is always deemed to be intentional.  Moreover, the inclusion of negligence theories in a complaint against a purported perpetrator does nothing to alter that result as the gravamen of the claim remains unchanged.

41.     Maryland courts have explained that "[t]here is [a] substantial certainty that sexual molestation of a child by [an adult] over an extended period of time will cause that child to suffer serious harm." *Harpy v. Nationwide Mut. Fire Ins. Co.*, 76 Md. App. 474, 483 (1988).  "While it is true that an intended act causing unintentional injury, under some circumstances, can be considered negligence, [a]s the probability of injury to another, apparent from the facts within his knowledge, becomes greater, his conduct takes on more of the attributes of intent, until it reaches that substantial certainty of harm which juries, and sometimes courts, may find inseparable from intent itself." *Id*. at 483-84 (internal citation omitted).

---

[1]  For purposes of this Complaint, it is Progressive's position that any analysis that is applicable to the allegations in the Underlying Actions regarding Mr. Weems' sexual abuse is equally applicable to any allegations in the Underlying Actions that Mr. Weems engaged in "assault", "battery", "false imprisonment", "intentional infliction of emotional distress", or any other intentional tort, as the Commercial Auto Policies generally disclaim coverage for any intentional conduct.

42.    Maryland courts have squarely rejected any attempt to recharacterize the intentional conduct of a perpetrator engaged in sexual misconduct as "negligence" as nothing more than a transparent attempt to generate coverage under a liability policy:

> Appellants argue that coverage potentially exists because they have asserted claims of negligence rather than claims based on intentional tort. As we stated earlier, appellants identify at least three negligence theories under which they proceed: (1) failure to warn or refrain from harmful conduct; (2) negligent care and supervision; and (3) premises liability. Preliminarily, we fail to see how Mr. Kowalski's pedophilia constitutes a premises defect that would support a cause of action for premises liability. Further, appellants have not cited, and our research has not uncovered, any case holding that there is a duty in negligence to warn others that one is about to commit an intentional tort.
>
> With respect to appellants' claims for negligent care and supervision, we note that it was Kowalski's intentional sexual molestation of the children and intentional self gratification by permitting others to molest the children, and not any other aspect of his care and supervision of the children, that caused their injuries. Accordingly, such a claim could be viewed as "a patent attempt to recharacterize, as negligent, an act that is clearly intentional. . . ." *Atwood*, 319 Md. at 253.
>
> In any event, even if we assume that Kowalski breached some duty in negligence to appellants, that does not change the fact that it was his ultimate sexual molestation of the boys that resulted in the injuries for which they seek compensation. Thus, ***we agree with Erie that any concurrent breach of negligence duty does not change the inquiry of whether Kowalski intended or expected to injure the children at the time he molested them***.

*Pettit v. Erie Ins. Exch.,* 117 Md. App. 212, 220-221 (1997) (emphasis added).

43.    Indeed, Maryland courts have instructed that "[w]here the allegations in the tort suit against the insured obviously constitute a patent attempt to recharacterize, as negligent, an act that is clearly intentional, we believe that a declaratory judgment action prior to the trial of the tort case is permissible." *Allstate Ins. Co. v. Atwood*, 319 Md. 247, 253 (1990).

44.    Furthermore, this Court has acknowledged that: "In these cases, [Maryland] courts [have] expressed concern that since both parties to an underlying tort suit share a common interest in the applicability of the insurance coverage, the parties stand to benefit from a jury's determination that clearly intentional actions constitute negligence. *Allstate Ins. Co. v Atwood*, 319

23

Md. 247, 253, 572 A.2d 154, 154 (1990); *Blue Ridge Ins. Co.*, 64 F. Supp.2d 514, 516-17 (1999). This common interest could result in the parties' steering the jury toward finding negligence instead of intentional torts." *Standard Fire Ins. Co. v. Proctor*, 286 F. Supp. 2d 567, 571-72 (D. Md. 2003).

45.     As a result, it is well established in Maryland that, with respect to the perpetrator, the "mere allegation of negligence is not sufficient to establish [an insurer's] duty to defend." *Id* at 572. "Indeed, 'it is the substance of the underlying claim, not its label, that controls in duty-to-defend and coverage cases.' *Travelers Indem. Co. of Amer. v. Jim Coleman Auto. of Columbia, LLC*, 236 F. Supp.2d 513, 516 (D. Md. 2002); *see also Blue Ridge Ins. Co.*, 64 F. Supp.2d at 517 ('where the undisputed facts of a case clearly support a finding of an intentional tort as a matter of law . . . declaratory relief is appropriate and . . . the insurer has no duty to defend, regardless of how the plaintiff in the underlying tort suit frames the complaint.')." *Standard Fire Ins. Co.*, 286 F. Supp. 2d at 572.

46.     Other courts, in some cases relying on Maryland's rulings, have also recognized that, in a liability insurance policy, a claim based on sexual misconduct does not come within the definition of an "accident" or "occurrence", not only for purposes of determining coverage for the perpetrator, but also for purposes of determining coverage for the perpetrator's purported employer and/or principal. These other courts have taken the logical step of extending Maryland's rule of excluding coverage for perpetrators to also exclude coverage for any purported employer and/or principal because the requirement for an "accident" is deemed to constitute a general disclaimer for any damages that arise from intentional conduct. *See Smith v. Animal Urgent Care, Inc.*, 208 W.Va. 664,542 S.E.2d 827 (2000); *GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112,1118 (7th Circ. 1995).

24

47.     Hence, the available decisions applying Maryland's perpetrator rule have concluded that the inclusion of negligence theories in a complaint against a purported employer and/or principal also does not create coverage because the gravamen of a sexual misconduct or abuse claim cannot be changed through artful pleading:

As a final means of attempting to avoid the preclusive effects of the "intentional acts" exclusion, Animal Care contends that the complaint filed by Ms. Smith contains additional allegations that are couched in negligence. Specifically, Animal Care maintains that averments stating that it "knew or should have known" of Dr. Yurko's conduct, but "failed to implement proper and appropriate corrective action in response thereto" imply a cause of action in negligence.

An analogous argument was rejected by this Court in *Leeber* where the insured focused on the inclusion of allegations concerning the negligent seduction of the assaulted student involved in an attempt to secure coverage. Borrowing from a Maryland decision, we stated that "the allegations of 'negligence' in the complaint are 'a transparent attempt to trigger insurance coverage by characterizing allegations of [intentional] tortious conduct under the guise of 'negligent' activity." 180 W. Va. at 381, 376 S.E.2d at 587 (*quoting Harpy v. Nationwide Mut. Fire Ins. Co.*, 76 Md. App. 474, 545 A.2d 718, 725 (Md. Ct. App. 1988)).

In *Fishes Hot Dog*, the district court cited this same language from *Leeber* in rejecting the insured's attempt to avoid the "intentional acts" exclusion based on inclusion of the term "negligent" in the complaint. Slip op. at 4.

Other courts have similarly determined that inclusion of negligence-type allegations in complaints that are essentially sexual harassment claims will not defeat the application of an "intentional acts" exclusion. *See Bilstein Corp. v. Federal Ins. Co.*, 168 F.3d 497, 1999 WL 96438, at *1 (9th Cir. 1999) (finding no duty to defend sexual harassment case that included claims of negligence and defamation under intentional act exclusion since non-harassment claims were "'inseparable'" from intentional harassment conduct); *Medallion Indus., Inc. v. Atlantic Mut. Ins. Co.*, 152 F.3d 927, 1998 WL 403338, at *2 (9th Cir. 1998) (upholding district court's determination of no coverage in sexual harassment case including count of negligent supervision, reasoning that mere labeling does not create negligence especially where Oregon law requires proof of employer's knowledge of employee's wrongful act); *Green Chimneys Sch. for Little Folk v. National Union Fire Ins. Co.*, 244 A.D.2d 387, 664 N.Y.S.2d 320, 321 (N.Y. App. Div. 1997) (affirming denial of coverage for sexual harassment claim because claim did not constitute "occurrence" under policy definition and ruling that "inclusion in the underlying complaint of causes of action sounding in negligent hiring and supervision does not alter the fact that 'the operative acts giving rise to any recovery [are] the [intentional sexual] assaults'"); *Board of Educ. v. Continental Ins. Co.*, 198

25

A.D.2d 816, 604 N.Y.S.2d 399, 400 (N.Y. App. Div. 1993) (finding no coverage for teacher's claim against school district for failing to prohibit sexual harassment by principal, creating offensive work environment, and wrongful termination and observing that inclusion of "knew or should have known" language did "not change the gravamen of the complaint from one alleging intentional acts . . . to one involving negligent conduct").

Accordingly, we determine that the inclusion of negligence-type allegations in a complaint that is at its essence a sexual harassment claim will not prevent the operation of an "intentional acts" exclusion contained in an insurance liability policy which is defined as excluding "bodily injury" "expected or intended from the standpoint of the insured."..."

*Smith v. Animal Urgent Care, Inc*., 208 W. Va. 664, 670-71 (2000). *See also Ball v. Baker*, No. 5:10-cv-00955, 2012 U.S. Dist. LEXIS 174992, at *13-14 (S.D. W. Va. Dec. 11, 2012).

48.     However, the "General Provisions" section in the Commercial Auto Policies also includes a "Severability" clause, which provides that: "Except with respect to the Limit of Liability, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or lawsuit is brought."

49.     As a result of the language in the Severability clause, it is likely that the Defendants in this action will argue that the "accident" requirement under the Commercial Auto Policies applies separately to Mr. Weems, LKK, Ms. Young, and/or Ms. Knox and that Mr. Weems' sexual abuse must be treated as an "accident" with respect to LKK, Ms. Young, and/or Ms. Knox.

50.     But that argument was squarely rejected in *Progressive Express Ins. Co. v. Rasier (FL), LLC*, No. 23-cv-60654, 2024 U.S. Dist. LEXIS 64348 (S.D. Fla. Apr. 8, 2024), where it was held that an Uber driver's shooting of a passenger following an argument regarding the ride did not constitute an accident from the perspective of the driver and/or Uber – notwithstanding the presence of a similar severability clause.

51.     In that case, the surviving claimant, McGlashan, argued that "the Severability Clause contained in the Policies demands examining the Incident from each Defendant's

26

perspective and the Incident constitutes an 'accident' under the Policies because it was unexpected from the perspective of Uber and Rasier [its subsidiary]." *Id.* at *29.  The *Raiser* court explained that clearly intentional conduct does not constitute an "accident" simply because a severability clause is included in a liability policy because the essential character of the conduct is intentional, regardless of the perspective considered:

> ***McGlashan again relies on the Policies' Severability Clause to argue that even if Bernadel intentionally shot and killed Decedent, Uber and Rasier did not. McGlashan accordingly argues the Incident constitutes an "accident" under the Policies because neither Uber nor Rasier expected or intended Bernadel would shoot and kill Decedent.*** The Court disagrees. First, Florida courts have consistently found an intentional act causing harm to a third party does not constitute an accident within the meaning of automobile liability policies. McGlashan points to no authority suggesting otherwise, nor does she articulate how the presence of a severability clause disturbs the conclusion that intentional acts are not accidents.
>
> Second, McGlashan's interpretation of the Severability Clause is unreasonable. According to McGlashan, the Severability Clause requires examining Bernadel's conduct from the perspective of Uber and Rasier. Because neither Uber or Rasier expected Bernadel to shoot and kill Decedent, McGlashan contends the Incident constitutes an accident under the Policies because it was a sudden, unexpected and unintended event from the perspective of Uber and Rasier. But the fact that Uber and Rasier presumably did not expect Bernadel to intentionally shoot Decedent does not render the Incident an unintended event under the Policies. Stated differently, the fact that Uber and Rasier did not expect the Incident does not change the conclusion that the Incident itself was an intentional act causing injury, and therefore not an "accident" under the Policies. McGlashan provides no support for her position that the Severability Clause demands examining the conduct of one insured, Bernadel, from the perspective of other insureds, Uber and Rasier.
>
> *    *    *
>
> Those allegations make clear Bernadel's intentional shooting—not Uber or Rasier's allegedly negligent selection or retention of Bernadel—caused Decedent's injuries. Even when viewed from Uber and Rasier's perspective, their conduct—allowing Bernadel to drive for Uber, failing to deactivate or deny access to his Uber account—is not "a sudden, unexpected and unintended event[,]" let alone an event "that causes bodily injury or property damage." ECF Nos. [1-1] at 2, [1-2] at 2. As discussed, the State Court Complaint does not allege Uber or Rasier's negligent conduct caused Decedent's bodily injury. Furthermore, McGlashan provides no support for her argument that the Incident constitutes an "accident" simply because

27

it was unexpected from the perspectives of Uber and Rasier. ***An intentional shooting is not an unexpected or unintended event causing bodily injury regardless of which insured's perspective is used to view the Incident.***

As such, the Court concludes that the undisputed evidence and allegations in the Wrongful Death Action demonstrate that the Incident does not constitute an "accident" under the Policies.

*Id*. at \*51-56 (emphasis added).

52.     Progressive submits that the decisions of the other courts cited above are consistent with the refusal of Maryland's courts to permit the intentional conduct of perpetrators to be recharacterized as negligent conduct so as to manufacture coverage.  Progressive also notes that this Court's "accident" and/or "occurrence" analysis must logically mirror its analysis of the Expected or Intended Injury Exclusion and, as is explained below, this Court has already ruled that "a severability clause is not inconsistent with the creation of ***a blanket exclusion for intentional acts***." *Standard Fire Ins. Co*., 286 F. Supp. 2d at 575 (citation omitted) (emphasis added).  This Court's assessment that Maryland law permits the application of an intentional act exclusion to any claims arising from intentional conduct, regardless of whether those claims are asserted against the perpetrator or other potential insureds such as the employer and/or principal, is also consistent with the rulings of the other courts above, that negligence allegations against an employer and/or principal do not permit claimants to circumvent a policy's clear disclaimer of coverage for intentional conduct.

53.     Consequently, the alleged sexual abuse of minors that forms the basis of the Underlying Actions cannot possibly constitute an "accident" under the Commercial Auto Policies and that result is not impacted, in any way, by any of the negligence theories that have been asserted in the Underlying Actions.  Progressive, therefore, has no duty to defend and/or indemnify LKK, Mr. Weems, Ms. Young, and/or Ms. Knox for any of the claims asserted in the Underlying Actions.

28

### THE ALLEGED SEXUAL ABUSE OF MINORS CANNOT QUALIFY AS A COVERED USE UNDER THE COMMERCIAL AUTO POLICIES

54.    As stated above, the Commercial Auto Policies provide, under Part I- Liability to Others, that "if you pay the premium for liability coverage for the insured auto involved, we will pay damages, other than punitive or exemplary damages for bodily injury...for which an insured becomes legally responsible because of an accident ***arising out of the ownership, maintenance or use of that insured auto***." (emphasis added).

55.    The Underlying Actions do not clearly identify Insured Auto No. 1 and/or Insured Auto No. 2 as being one of the locations where any alleged sexual abuse occurred.  However, no coverage would be triggered under the Commercial Auto Policies even if one assumes that some of the alleged sexual abuse occurred in Insured Auto No. 1 and/or Insured Auto No. 2.

56.    Even if treated as true, the mere allegation that one of these vehicles was *a location* where Mr. Weems committed some of the sexual abuse or other intentional torts referenced in the Underlying Actions cannot trigger coverage under the Commercial Auto Policies because such misconduct does not "aris[e] out of the ownership, maintenance or use of [an] insured auto."

57.    Similarly, the mere allegation that the minors in the Underlying Actions suffered injuries in one of these vehicles as a consequence of, for instance, LKK, Ms. Young and/or Ms. Knox's negligent hiring, retention and/or supervision of Mr. Weems also cannot trigger coverage under the Commercial Auto Polices because the injuries themselves, regardless of the theory of recovery, do not "aris[e] out of the ownership, maintenance or use of [an] insured auto."

58.    Maryland courts have made clear that coverage under an auto policy cannot be triggered by the mere fortuity of an injury occurring in or near an insured auto and that, for coverage to apply under an auto policy, there must be a *direct* causal relationship between the insured auto and the injury – as an *incidental* causal relationship is insufficient.

59.     In Maryland, the key case is *Harris v. Nationwide Mut. Ins. Co.*, 117 Md. App. 1 (1997), which provides the controlling definition of what "ownership, maintenance, or use" mean for purposes of an auto policy.  In *Harris*, the court held that a covered use was presented when a thief in a car attempted to steal the insured victim's purse in a parking lot and ended up dragging her alongside the car for 15 feet because her arm was entangled in her purse strap. In explaining its ruling, the court stated as follows:

> The case which provides the applicable test is *Frazier v. Unsatisfied Claim and Judgment Fund Board*, 262 Md. 115, 277 A.2d 57 (1971). In *Frazier*, a woman was driving on a Fourth of July evening, and had her five year-old son strapped into the back seat of her car, when an unidentified driver travelling in the opposite direction threw a lighted cherry bomb through one of her car's open windows and into her back seat. Shortly thereafter, the cherry bomb exploded, and the woman, distracted by the explosion, drove into a tree, injuring herself and her son. Subsequently, she brought suit on behalf of herself and her son to recover from the Unsatisfied Claim and Judgment Fund; and one of the dispositive issues in the case was whether her injuries arose out of the "ownership, maintenance, or use" of a motor vehicle.
>
> Addressing the question, the Court of Appeals held that the answer turns on ***"whether the use of an automobile <u>is directly or merely incidentally causally connected with the injury</u>, even though the automobile itself may not have proximately caused the injury."*** *Frazier,* 262 Md. at 118. ***That is, if the use of a motor vehicle (or, by extension, the ownership or maintenance of a motor vehicle) is directly connected, causally, to the injury, then the injury may be said to have arisen out of the "ownership, maintenance, or use" of a motor vehicle; <u>by contrast, if the ownership, maintenance, or use of a motor vehicle is only incidentally connected, causally, to the injury, then the injury has not arisen out of the "ownership, maintenance, or use" of a motor vehicle</u>***.
>
> *       *       *
>
> ***We can say, however, that Mrs. Harris's injuries were directly connected, causally, to the use of an uninsured motor vehicle. Indeed, had it not been for the assailant's use of the automobile, Mrs. Harris would probably not have been knocked to the ground as forcefully as she was in the attack, and she almost certainly would not have been roughly dragged along the ground for 15 feet.*** Thus, if not for the assailant's use of an automobile, Mrs. Harris's injuries would have been much less extensive than they were.

*Harris*, 117 Md. App. at 15-18 (emphasis added).

*60.*    In fact, Maryland courts have recognized that the majority position followed by courts on this issue is that the physical assaults of third parties in or near an insured auto cannot be said to arise from the ownership, maintenance or use of that auto unless there is a direct causal connection that is akin to the assault in *Harris*, *supra*. *See Wright v. Allstate Ins. Co.*, 128 Md. App. 694, 701 (1999) ("The majority of courts that have considered whether personal injuries from physical assaults by insured vehicle drivers or passengers arose out of the use of the vehicle have found no causal relation between the use of the vehicle and injuries sustained by physical assaults. *Accord: Govt. Employees Ins. Co. v. Melton*, 357 F. Supp. 416 (1972), aff'd, 473 F.2d 909 (4th Cir. 1973); *Detroit Automobile Inter-Ins. Exchange v. Higginbotham, supra*; *Love v. Farmers Ins. Group*, 121 Ariz. 71, 588 P.2d 364 (1978); *Aetna Casualty and Surety Co. v. Goldman*, 374 So. 2d 539 (Fla. App. 1979); *Nationwide Mutual Ins. Co. v. Knight*, 34 N.C. App. 96, 237 S.E.2d 341 (1977)....").[2]

61.    The Stanton Action alleges that Mr. Weems' sexual abuse occurred in "the school age children room and the outdoor playground, as well as the van". *Id*. at ¶ 41. Similarly, the Simpkins Action alleges that "[d]uring each sexual assault and battery by Defendant James [Weems], Plaintiff was unlawfully deprived of his liberty to leave the transportation van, daycare center, and/or room/facility he was held in by Defendant Weems." *Id*. at ¶ 123. Finally, the Doe Action alleges that "Defendant Weems watched internet pornography while in the vicinity of and/or supervising children at the daycare, including while transporting children in the van and monitoring and/or supervising children in the school age room." *Id*. at ¶ 30.

---

[2] *See also Progressive Express Ins. Co. v. Rasier (FL), LLC*, No. 23-cv-60654, 2024 U.S. Dist. LEXIS 64348 (S.D. Fla. Apr. 8, 2024); *Baber v. Fortner*, 186 W.Va.413, 412 S.E.2d 814 (1991); *Nationwide Mut. Ins. Co. v. Brown*, 779 F.2d 984, 988(4th Cir. 1985); *Detroit Auto. Inter-Insurance Exchange v. Higginbotham*, 95 Mich. App. 213,290 N.W.2d 414, 419 (1980); *SCR Medical Transp. Services, Inc. v. Browne*, 335 Ill.App.3d 585, 781 N.E.2d 64 (Ill. Ct. App.2002)

62.     The mere allegation that one of Progressive's insured autos may have been among the locations where Mr. Weems committed the sexual abuse at issue in the Underlying Actions cannot constitute a covered use under the Commercial Auto Policies because there is no direct causal connection between the alleged injuries and the ownership, maintenance or use of Insured Auto No. 1 and/or Insured Auto No. 2.  To the extent either vehicle was involved, the vehicles were merely another situs of the minors' alleged injuries.

63.     Any connection drawn between Mr. Weems' alleged sexual abuse and Insured Auto No. 1 and/or Insured Auto No. 2 is clearly incidental in nature as there is no allegation that Mr. Weems' alleged sexual abuse in those vehicles was any different than the alleged sexual abuse he committed in other locations.  There is also no allegation that Mr. Weems somehow used these vehicles to injure the minors in a manner that is distinct from the injuries the minors suffered in the other locations.

64.     Consequently, the allegation in the Underlying Actions that some of the sexual abuse occurred in a "white van" is insufficient, as a matter of law, to constitute an injury which arises from the ownership, maintenance or use of an insured auto under the Commercial Auto Policies.  Progressive, therefore, has no duty to defend and/or indemnify LKK, Mr. Weems, Ms. Young, and/or Ms. Knox for any of the claims asserted in the Underlying Actions.

### THE EXPECTED OR INTENDED INJURY EXCLUSION IN THE COMMERCIAL AUTO POLICIES PRECLUDES COVERAGE FOR THE ALLEGED SEXUAL ABUSE OF MINORS

65.     The "Exclusions" section in the Commercial Auto Policies provides that: "Coverage under this Part I, including our duty to defend, does not apply to...1. Expected or Intended Injury [which is] [b]odily Injury...either expected by or caused intentionally by or at the direction of *any insured*." (emphasis added).

66.     Maryland courts have held that "an adult insured's intent to engage in sexual contact with a child embodies an intent to injure for the purpose of applying the intentional injury exclusion." *Pettit v. Erie Ins. Exch.*, 349 Md. 777, 780 (1998).

67.     Therefore, as Mr. Weems' alleged sexual abuse must be deemed to be intentional conduct as a matter of law, the Expected or Intended Injury Exclusion precludes coverage under the Commercial Auto Policies for LKK, Mr. Weems, Ms. Young, and Ms. Knox, notwithstanding any of the coverage issues raised above.

68.     However, the "General Provisions" section in the Commercial Auto Policies also includes a "Severability" clause, which provides that: "Except with respect to the Limit of Liability, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or lawsuit is brought."

69.     As a result of the language in the Severability clause, it is likely that the Defendants in this action will argue that the Expected or Intended Injury Exclusion only precludes coverage under the Commercial Auto Policies for Mr. Weems and that LKK, Ms. Young, and/or Ms. Knox must be treated as "innocent co-insureds".

70.     But this Court has already rejected that very same argument in *Standard Fire Ins. Co.*, *supra*, where it expressly held that a father's purported negligent failure to prevent an assault committed by his son did not render the father an "innocent co-insured" because, as is the case here, the intentional act exclusion applied to "any insured" and thereby provided no carve-out coverage for any so-called "innocent co-insureds":

> Standard Fire argues that the use of the terms "any insured" instead of "the insured" expresses a contractual intent to create joint obligations on the part of co-insureds and to prohibit recovery by an innocent insured due to his co-insured's uncovered actions. Mr. Proctor responds that "any insured" should be read together with the policy provision that states "this insurance applies separately to each insured." Mr. Proctor maintains that the only way to give effect to all of the terms of the policy,

is to construe the "any insured" language in such a way that one co-insured is not removed from coverage due to the acts of another co-insured. (internal citations omitted).

*      *      *

The Maryland courts have not directly addressed the construal of "any insured.". 4 Jurisdictions have taken differing approaches to construing this language. For example, in *Worcester Mutual Ins. Co. v. Marnell*, 398 Mass. 240, 496, 496 N.E.2d 158, N.E.2d 158 (1986), the Massachusetts Supreme Court concluded that where the homeowners insurance policy contains an automobile exclusion for "any insured," as well as a severability clause, each insured should be treated as having separate insurance coverage." *Worcester Mutual Ins. Co*., 496 N.E.2d at 161.

***This Court, however, agrees with the majority of jurisdictions who have taken the alternative approach and interpreted "any insured" as unambiguously expressing "'a contractual intent to create joint obligations and <u>to prohibit recovery by an innocent co-insured</u>.'"*** *See, Chacon v. Amer. Family Mut. Ins. Co*., 788 P.2d 748, 751 (Colo. 1990) (*citing Sales v. State Farm Fire & Casualty Co*., 849 F.2d 1383, 1385 (11th Cir. 1988) (citations omitted). In *Chacon*, the homeowner's policy indicated that personal liability coverage did not extend to "bodily injury or property damage . . . which is expected or intended by any insured," and included a severability clause providing that "each person described above is a separate insured under this policy." *Id*. at 750. ***The court indicated that a severability clause "<u>is not inconsistent with the creation of a blanket exclusion</u> for intentional acts." *Id*. at 752 n. 6. 6 Furthermore, the court concluded that the "any insured" provision "clearly and unambiguously expresses an intention to deny coverage to all insured when damage is intended or expected as a result of the actions of any insured." *Id.* at 752.***

Similarly, this Court finds that Standard Fire's insurance policy's exclusion from liability coverage "any insured" who "expected or intended "the bodily injury precludes coverage for Mr. Proctor, where the injury resulted from the intentional acts of Gary W. Proctor, the co-insured.

*Standard Fire Ins. Co*., 286 F. Supp. 2d at 574-75 (emphasis added).

71.    Consequently, even if this Court were to conclude that none of the above coverage defenses apply, the Expected or Intended Injury Exclusion still precludes coverage for LKK, Mr. Weems, Ms. Young and Ms. Knox for any claims asserted in the Underlying Actions. Progressive, therefore, has no duty to defend and/or indemnify LKK, Mr. Weems, Ms. Young, and/or Ms. Knox for any of the claims asserted in the Underlying Actions.

## COVERAGE FOR PUNITIVE DAMAGES IS EXPRESSLY PRECLUDED UNDER THE COMMERCIAL AUTO POLICIES

72.     The liability coverage provided under "Part I-Liability To Others" states that, if all of the terms of the Commercial Auto Policies are satisfied, "we will pay damages, ***other than punitive or exemplary damages***, for bodily injury…for which an insured becomes legally responsible because of an accident arising out of the ownership, maintenance or use of that insured auto." (emphasis added).

73.     Therefore, under the clear terms of the Commercial Auto Policies, there is no coverage for punitive damages under any circumstances.

74.     In Maryland, it is well recognized that "[p]unitive damages are reserved typically for punishing the most heinous of intentional torts and tortfeasors" and that "[s]uch damages are only awarded in an attempt to punish a defendant whose conduct is characterized by evil motive, intent to injure, or fraud, and to warn others contemplating similar conduct of the serious risk of monetary liability." *Beall v. Holloway-Johnson*, 446 Md. 48, 71-72 (2016).

75.     As the Commercial Auto Policies, consistent with their terms, only provide coverage for accidents, there is no coverage for intentional and/or malicious conduct and, accordingly, there is no coverage for the punitive damages that may be awarded to punish and/or deter such conduct.

76.     Consequently, there is no coverage under the Commercial Auto Policies for any of the punitive damages that are sought in the Underlying Actions.  Progressive, therefore, has no duty to defend and/or indemnify LKK, Mr. Weems, Ms. Young, and/or Ms. Knox for any such claims asserted in the Underlying Actions.

## COUNT I – DECLARATORY JUDGMENT – AGAINST ALL DEFENDANTS

77.     Progressive incorporates Paragraphs 1-76 as if fully set forth herein.

78. For the Commercial Auto Policies to apply to any injuries, damages, and/or loss alleged in the Underlying Actions, the claims in the Underlying Actions must be asserted against an "insured".

79. With the exception of LKK, who is a named insured, the claims in the Underlying Actions are asserted against the following individuals (who cannot qualify as insureds): Mr. Weems, Ms. Young, and Ms. Knox.

80. The Commercial Auto Policies therefore do not provide coverage for any claims in the Underlying Actions asserted against Mr. Weems, Ms. Young, and Ms. Knox.

81. For the Commercial Auto Policies to apply to any injuries, damages, and/or loss alleged in the Underlying Actions, the claims in the Underlying Actions must be caused by an "accident".

82. Maryland courts have concluded that sexual abuse of minors, as a matter of law, constitutes intentional conduct that cannot be treated as an accident or occurrence for purposes of triggering coverage under a liability policy.

83. Maryland courts have also concluded that a tort claimant's inclusion of negligence claims in a complaint which seeks to recover for sexual abuse or misconduct cannot recharacterize intentional conduct as negligent conduct to trigger coverage under a liability policy.

84. Mr. Weems is alleged to have engaged in the sexual abuse of the minors referenced in the Underlying Actions and to have done so with the knowledge and/or ratification of LKK, Ms. Young, and Ms. Knox.

85. The Commercial Auto Policies therefore do not provide coverage for any claims in the Underlying Actions asserted against LKK, Mr. Weems, Ms. Young, and Ms. Knox.

86.     For the Commercial Auto Policies to apply to any injuries, damages, and/or loss alleged in the Underlying Actions, the claims in the Underlying Actions must arise from the "ownership, maintenance or use" of an insured auto.

87.     Maryland courts have concluded that, for a injury to arise from the "ownership, maintenance or use" of an insured auto, the injury must have a direct causal connection to the use of an insured auto, and that there must be more than merely an incidental causal connection.

88.     The allegations in the Underlying Actions are that Mr. Weems sexually abused the minors in the building LKK used to conduct its daycare operations; outside that building on a nearby playground; and inside a "white van" that Defendants contend was either Insured Auto No.1 or Insured Auto No. 2.

89.     As Mr. Weems' sexual abuse of the minors in the Underlying Actions is alleged to have been the same in all of the above locations and that the minors suffered similar injuries regardless of the locations involved, the mere fortuity of Insured Auto No. 1 and/or Insured Auto No. 2 being one of the alleged locations does not demonstrate any injuries which arise from the "ownership, maintenance or use" of Insured Auto No. 1 and/or Insured Auto No. 2.

90.     To the contrary, any isolated incidents of sexual abuse in Insured Auto No. 1 and/or Insured Auto No. 2 cannot reflect a direct causal connection between those vehicles and any injuries the minors in the Underlying Actions allegedly suffered – as the location for the abuse has, at best, only an incidental causal connection to any such injuries.

91.     The Commercial Auto Policies therefore do not provide coverage for any claims in the Underlying Actions asserted against LKK, Mr. Weems, Ms. Young, and Ms. Knox.

92. For the Commercial Auto Policies to apply to any injuries, damages, and/or loss alleged in the Underlying Actions, the claims in the Underlying Actions must not be subject to any of the applicable exclusions.

93. The Expected or Intended Injury Exclusion in the Commercial Auto Policies is applicable to the claims in the Underlying Actions because all such claims are alleged to be the result of Mr. Weems' sexual abuse, which, again, is deemed to be intentional conduct, as a matter of law.

94. Maryland courts have concluded that an intentional act exclusion, like the Expected or Intended Injury Exclusion, which is directed towards "any insured" creates a "blanket exclusion" for any claims or damages arising from any intentional conduct and that such exclusion applies both to a perpetrator, like Mr. Weems, and to any potential co-insureds, like LKK, Ms. Young, and Ms. Knox.

95. The Commercial Auto Policies therefore do not provide coverage for any claims in the Underlying Actions asserted against LKK, Mr. Weems, Ms. Young, and Ms. Knox.

96. The Commercial Auto Policies also expressly provide that they do not apply to any punitive damages claims that have been asserted in the Underlying Actions against LKK, Mr. Weems, Ms. Young, and Ms. Knox.

97. There is a substantial controversy between Progressive and the Defendants regarding each of the above coverage issues and/or coverage defenses and/or regarding how the Commercial Auto Policies apply, if at all, to the claims asserted in the Underlying Actions.

98. There is a real, immediate, concrete and non-hypothetical dispute between Progressive and the Defendants regarding each of the above coverage issues and/or coverage

defenses and/or regarding how the Commercial Auto Policies apply, if at all, to the claims asserted in the Underlying Actions.

99.    A declaration of the rights and obligations of the parties regarding how the Commercial Auto Policies apply, if at all, to the claims asserted in the Underlying Actions, would provide complete and/or conclusive resolution to a current legal controversy between the parties.

WHEREFORE, Plaintiff, Progressive Casualty Insurance Company respectfully requests that this Honorable Court:

A.    Determine and adjudicate the rights and obligations of the parties with respect to the Commercial Auto Policies, the Underlying Actions, and each other.

B.    Declare that under the Commercial Auto Policies, Progressive has no duty to defend and/or indemnify Defendants for any claims asserted in the Underlying Actions.

C.    Grant such other and further relief as the nature of this cause of action may require.

Respectfully submitted,

/s/ Kambon R. Williams
Kambon R. Williams (Federal Bar No. 29872)
Pessin Katz Law, P.A.
4690 Millennium Drive, Suite 200
Belcamp, Maryland 21017
(410) 938-8800
kwilliams@pklaw.com
***Attorneys for Plaintiff Progressive Casualty Insurance Company***